UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN F., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-0197JLR <br><br> ORDER REVERSING AND REMANDING DENIAL OF BENEFITS |

## I. INTRODUCTION

Plaintiff John F. seeks review of the denial of his application for disability insurance benefits. (*See* Compl. (Dkt. # 3).) Plaintiff contends that the administrative law judge ("ALJ") erred in discounting (1) Plaintiff's testimony, (2) the opinions of Plaintiff's treating primary care physician, Mary Wemple, M.D., and (3) the lay witness statements of Plaintiff's father. (Pl. Op. Br. (Dkt. # 9) at 1.) As discussed below, the court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. § 404.1520, ALJ

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 1

Ilene Sloan found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since July 25, 2014, the alleged onset date. *See* 20 C.F.R. §§ 404.1571-76.
>
> **Step two:** Plaintiff has the following severe impairments: Ankylosing spondylitis, fibromyalgia, anxiety, and depression. *See* 20 C.F.R. § 404.1520(c).
>
> **Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.
>
> **Residual Functional Capacity:** Plaintiff can perform light work as defined in 20 C.F.R. § 404.1567(b), with exceptions. He can stand and walk for three hours in an eight-hour day. He can sit for six hours in an eight-hour day. He can frequently climb ramps and stairs, balance, kneel, crouch, and crawl. He can occasionally climb ladders, ropes, and scaffolds, and occasionally stoop. He can adapt to predictable changes in the work setting. He must avoid concentrated exposure to extreme cold. He can understand, remember, and carry out simple tasks. He can have occasional contact with the general public, but it should not be an essential element of any task.
>
> **Step four:** Plaintiff is unable to perform any past relevant work. *See* 20 C.F.R. § 404.1565.
>
> **Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569(a).

(Admin. Record ("AR") (Dkt. # 7) at 16-31.) ALJ Sloan thus found that Plaintiff had not been under a disability, as defined by the Social Security Act ("Act"), from July 25, 2014, through the date of ALJ Sloan's decision. (*Id.* at 31.) The Appeals Council denied Plaintiff's request for review, making ALJ Sloan's decision the Commissioner's final decision. (*See id.* at 1-3.)

//

# III. ANALYSIS

Plaintiff bears the burden of proving that he is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may set aside a denial of social security benefits only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Although the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## A. The ALJ Harmfully Erred in Discounting Plaintiff's Symptom Testimony

Plaintiff argues that ALJ Sloan erred in discounting Plaintiff's testimony about his symptoms from fibromyalgia and ankylosing spondylitis. (Pl. Op. Br. at 3-15.) Plaintiff testified that he suffers from fatigue, which caused him to be absent from his work prior to the disability period. (AR at 43-45, 192, 211.) Plaintiff testified that he needs to lie down three to four times a day for 15 to 40 minutes at a time because his back stiffens up and he needs to "recharge." (*Id.* at 45-46.) He spends most of his day at his computer, which is next to his bed, so he can lie down as needed. (*Id.* at 46-47, 193.) Plaintiff testified that he plays board games such as Dungeons & Dragons with a few close friends about once a week. (*Id.* at 47-48.) He plays live-action role-playing games about once a

month.  (*Id.* at 48-49, 56, 196.)  This involves going to a park and acting out fantasy stories such as *The Lord of the Rings*.  (*Id.* at 48-49.)  Plaintiff takes a sedentary role that involves sitting in a circle and upgrading other players' weapons.  (*Id.* at 56.)

Plaintiff testified that he receives Remicade injections, which involve going to a clinic and receiving medication through an IV over the course of a few hours.  (*Id.* at 50-51.)  These medications target his autoimmune problems, which cause inflammation and stiffness in his spine.  (*Id.* at 56-57.)  Plaintiff originally received the injections once every eight weeks, but reported increasing the frequency to once every six weeks because the medication was wearing off too quickly.  (*Id.* at 51.)  Plaintiff testified that he receives Benadryl and other medications with the Remicade to help control the infusion procession.  (*Id.* at 52.)  These medications cause symptoms that make it difficult for him to function for the rest of the day after the infusion, as well as the next day.  (*Id.*)  Plaintiff also testified to anxiety and depression symptoms.[1]  (*Id.* at 48, 53, 55.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only

---

[1] Plaintiff does not object to ALJ Sloan's discussion of Plaintiff's mental limitations, including problems concentrating, handling large changes, and interacting with people, except with respect to limitations due to fatigue. (Pl. Op. Br. at 11.)

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 4

show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* ALJ Sloan found that Plaintiff met this step because his medically determinable impairments could reasonably have caused the symptoms he alleged. (AR at 23.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

ALJ Sloan discounted Plaintiff's testimony regarding his symptoms because she determined that there were minimal objective findings in the record to support it, it was inconsistent with his daily activities, and it was undermined by his receipt of unemployment benefits. (*Id.* at 23-26.) ALJ Sloan also rejected Plaintiff's testimony that he would be absent from work for medically necessary reasons—meaning his Remicade injections—because she believed Plaintiff could possibly receive the injections on weekends, and because Plaintiff increased the frequency of the injections. (*Id.* at 24.) ALJ Sloan's reasoning does not withstand scrutiny.

1. **The ALJ Erred in Discounting Plaintiff's Subjective Symptom Testimony Based on Minimal Objective Findings**

ALJ Sloan erred in discounting Plaintiff's testimony based on minimal objective findings in the record. Although an ALJ may consider the medical evidence in evaluating the severity of a claimant's pain, "'an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.'" *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (alteration in original); *see also* 20 C.F.R. § 404.1529(c)(2). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

ALJ Sloan noted that Plaintiff had normal objective findings, but she failed to explain how those were related to Plaintiff's allegations of pain and fatigue. The absence of ocular inflammation, for example, does not contradict Plaintiff's claims that he experiences stiffness in his back and fatigue. (*See* AR at 23.) Moreover, ALJ Sloan's references to findings such as normal range of motion of the hips and neck, and normal chest expansion veer too far into the territory of medical expertise. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to

succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted). Whether individuals with ankylosing spondylitis and fibromyalgia necessarily have restricted range of motion in their joints or abnormal chest expansion is not a commonly known or established medical fact, and ALJ Sloan thus erred in rejecting Plaintiff's testimony based on that assumption.

In addition, ALJ Sloan's reference to objective findings ignores the nature of Plaintiff's impairments. Fibromyalgia, for example, is an "unusual" disease for which "there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal citations and quotation marks omitted). ALJ Sloan found that Plaintiff's fibromyalgia was a severe, medically determinable impairment, and her rejection of Plaintiff's testimony based on minimal objective findings fails to account for the nature of that disease. (*See* AR at 18-19.) ALJ Sloan therefore erred in discounting Plaintiff's testimony based on minimal objective findings.

>   2.   <u>The ALJ Erred in Discounting Plaintiff's Subjective Symptom Testimony Based on Plaintiff's Daily Activities</u>

ALJ Sloan erred in discounting Plaintiff's symptom testimony based on her evaluation of Plaintiff's daily activities. An ALJ may reject a Plaintiff's symptom testimony based on his daily activities if they contradict his testimony or "meet the

threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). But the ALJ's analysis must be a reasonable interpretation of the evidence. *See Thomas*, 278 F.3d at 954. ALJ Sloan's analysis falls short here.

ALJ Sloan erred in discounting Plaintiff's testimony based on his daily activities for two reasons. First, many of the activities to which ALJ Sloan pointed did not contradict Plaintiff's testimony. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603). That Plaintiff plays board games with friends once a week, plays video games for a few hours each day, does his own laundry, cleans his living space, and goes grocery shopping does not contradict his claims of significant pain and fatigue.

Second, ALJ Sloan unreasonably speculated on Plaintiff's level of physical involvement in his live-action role-playing games. Plaintiff testified that he took a passive role in these games, spending his time sitting in a circle rather than engaging in more physical aspects such as sword fighting. (*See* AR at 48-49, 56.) ALJ Sloan decided that "this does not seem very plausible given the nature of the game and the settings where the game is played." (*Id.* at 24.) That is not an explanation; it is just a statement that ALJ Sloan did not believe Plaintiff. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). ALJ Sloan erred in discounting Plaintiff's testimony based on his daily activities.

        3.      <u>The ALJ Erred in Discounting Plaintiff's Subjective Symptom Testimony Based on His Collection of Unemployment Benefits</u>

ALJ Sloan erred in discounting Plaintiff's testimony based on his collection of unemployment benefits because the record is vague as to the period in which he received those benefits, and the evidence that does exist does not convincingly undermine Plaintiff's claims. "[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . ." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). The record here provides only minimal evidence about Plaintiff's receipt of unemployment benefits. Plaintiff testified that he received unemployment benefits "for a few months" after his last job, and stopped seeking benefits once he felt that he could not actually maintain any of the jobs he was applying for in order to be eligible for unemployment benefits. (AR at 43.) This is not enough to support wholesale rejection of Plaintiff's testimony regarding his symptoms over the entirety of the disability period. ALJ Sloan therefore erred in rejecting Plaintiff's symptom testimony based on his receipt of unemployment benefits.

//

//

### 4. The ALJ Erred in Evaluating Whether Plaintiff Would Have Medically Necessary Absences from Work

ALJ Sloan erred in finding no evidence of medically necessary absenteeism because her analysis was based on speculation. ALJ Sloan reasoned that Plaintiff would not need to miss as many days of work as alleged due to his Remicade injections because Dr. Wemple once noted that Plaintiff "may need to look at weekend infusion options due to work." (*Id.* at 24, 294.) There is no evidence in the record that weekend infusion options were available to Plaintiff. ALJ Sloan's reasoning was therefore based on speculation, and not supported by substantial evidence.

ALJ Sloan also discounted Plaintiff's claims of medically necessary absenteeism because Plaintiff "felt sufficient benefit from Remicade that he increased the frequency of treatment from once per eight weeks to once per six weeks." (AR at 24.) But Plaintiff did not increase the frequency with which he received his Remicade injections because they were working well; he increased them because they were wearing off too soon. (*See id.* at 51, 362, 399, 407, 413.) ALJ Sloan's analysis is not supported by substantial evidence. ALJ Sloan thus erred in discounting Plaintiff's testimony regarding medically necessary absences. *See Hill*, 698 F.3d at 1159.

ALJ Sloan failed to provide clear and convincing reasons to reject any of Plaintiff's testimony. As a result, ALJ Sloan harmfully erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

### B. The ALJ Harmfully Erred in Rejecting Dr. Wemple's Opinions

Plaintiff argues that ALJ Sloan erred in rejecting Dr. Wemple's opinions regarding

Plaintiff's absenteeism and need to lie down during the day. (Pl. Op. Br. at 15-16.) Dr. Wemple is Plaintiff's treating doctor. (*See* AR at 285-338, 351-73, 377-80, 382-465.) Dr. Wemple submitted a medical source statement, dated February 7, 2016. (*Id.* at 377-80.) She opined that Plaintiff had exertional, postural, and environmental limitations. (*Id.* at 377-79.) Dr. Wemple opined that she expected Plaintiff's symptoms to cause him to be absent from work an average of three times per month. (*Id.* at 380.)

ALJ Sloan accepted Dr. Wemple's opinions on Plaintiff's exertional and environmental limitations. (*See id.* at 22, 27.) But ALJ Sloan gave Dr. Wemple's opinions regarding Plaintiff's absenteeism and postural limitations little weight. (AR at 27-28.) ALJ Sloan reasoned that Dr. Wemple "provides no explanation for her conclusion that [Plaintiff] will have more than three impairment-related absences from work per month and the evidence provides no basis for such a conclusion outside of [Plaintiff's] own statements." (*Id.* at 27.) ALJ Sloan further reasoned that Plaintiff's daily activities and Dr. Wemple's treatment notes were inconsistent with Dr. Wemple's opinions. (*Id.* at 27-28.)

An ALJ may only reject the opinions of a treating doctor when contradicted if the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). ALJ Sloan's analysis falls short of this standard.

ALJ Sloan erred in rejecting Dr. Wemple's opinions for being unexplained and relying too heavily on Plaintiff's subjective statements. As discussed above, ALJ Sloan

erred in rejecting Plaintiff's subjective statements. *See supra* § III.A. ALJ Sloan therefore could not reasonably reject Dr. Wemple's opinions because they were based on Plaintiff's statements. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008; *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

ALJ Sloan further erred in rejecting Dr. Wemple's opinions as inconsistent with Plaintiff's daily activities. As discussed above with respect to Plaintiff's testimony, Plaintiff's daily activities did not contradict his claimed level of pain and fatigue, and ALJ Sloan unreasonably speculated in evaluating Plaintiff's activity level. *See supra* § III.A.2. The same analysis applies here. Plaintiff's daily activities do not contradict Dr. Wemple's opinions regarding Plaintiff's absenteeism and postural limitations.

ALJ Sloan similarly erred in rejecting Dr. Wemple's opinions as inconsistent with mild objective findings in her treatment notes. Once again, as discussed above with respect to Plaintiff's testimony, the medical findings to which ALJ Sloan pointed do not contradict Dr. Wemple's opinions regarding Plaintiff's absenteeism and postural limitations. *See supra* § III.A.1. If anything, the objective findings ALJ Sloan referenced relate to Dr. Wemple's opinions on Plaintiff's exertional limitations, but ALJ Sloan accepted those opinions. (*See* AR at 27-28.)

In sum, ALJ Sloan failed to provide specific and legitimate reasons to reject Dr. Wemple's opinions. ALJ Sloan therefore harmfully erred in rejecting Dr. Wemple's opinions. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

//

## C. The ALJ Harmfully Erred in Rejecting Plaintiff's Father's Statements

Plaintiff argues that ALJ Sloan erred in rejecting Plaintiff's father's lay witness statements. (AR at 16-18.) Plaintiff's father submitted a written statement describing Plaintiff's symptoms. (*Id.* at 251-60.) Plaintiff's father explained that Plaintiff's symptoms varied day-to-day and week-to-week. (*Id.* at 251.) Plaintiff had days where he could be active and days where he needed to lie down all day. (*Id.*) Plaintiff was limited in his ability to walk and stand. (*Id.* at 252-53.) Plaintiff's father stated that Plaintiff "would be limited to [lifting] well under 50 lbs." (*Id.*) Plaintiff's father explained that Plaintiff had some depressive symptoms, and some cognitive limitations due to pain and brain fog. (*Id.* at 255-58.) Plaintiff's father opined that "[t]he variableness of [Plaintiff's] pain and inability to focus makes it difficult to keep a schedule for regular employment." (*Id.* at 259.)

ALJ Sloan gave some weight to Plaintiff's father's observations of Plaintiff, but little weight to his opinion that Plaintiff could not work. (*Id.* at 28.) ALJ Sloan reasoned that Plaintiff's father's "opinions appear to rely on [Plaintiff's] statements to him, such as [Plaintiff's father's] statements regarding [Plaintiff's] difficulty focusing on work-related tasks, rather than his own observations." (*Id.*) ALJ Sloan rejected Plaintiff's father's statement that Plaintiff was limited to lifting well under 50 pounds "because it is too vague and unspecific to use to formulate the [RFC]." (*Id.*)

In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

ALJ Sloan erred in rejecting Plaintiff's father's statements. As discussed above, ALJ Sloan erred in rejecting Plaintiff's statements, so ALJ Sloan could not fault Plaintiff's father for relying on those statements. *See supra* § III.A. However, ALJ Sloan did not harmfully err in rejecting Plaintiff's father's opinion that Plaintiff was limited to lifting under 50 pounds. ALJ Sloan correctly noted that the statement was too vague to be useful in formulating the RFC.

**D.     Scope of Remand**

Plaintiff asks the court to remand this matter for an award of benefits. (Pl. Op. Br. at 18.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits, known as the "credit-as-true" rule. *Id.* at 1045. First, the court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can

be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. Although ALJ Sloan erred in rejecting Plaintiff's testimony regarding medically necessary absenteeism, the court cannot say for certain based on the evidence how many medically necessary absences Plaintiff would have on average. The remainder of the evidence on Plaintiff's limitations is not so clear as to permit the court to find disability. There is no vocational expert testimony, for example, regarding the need to lie down periodically during the day. (*See* AR at 63-70.) The evidence is also not conclusive as to how many breaks Plaintiff would need to take during the work day, how many impairment-related absences he may have, and what employers would tolerate. (*See id.* at 43-47, 63-70.) The court therefore remands this matter for further proceedings to resolve ambiguities and gaps in the evidence. *See Leon*, 880 F.3d at 1047-48.

On remand, the ALJ shall reevaluate Plaintiff's symptom testimony, Dr. Wemple's opinions, and Plaintiff's father's statements. The ALJ shall reevaluate the

ORDER REVERSING AND REMANDING
DENIAL OF BENEFITS - 15

relevant steps of the disability evaluation process, and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of October, 2019.

JAMES L. ROBART
United States District Judge